UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | | |
|---|---|---|---|
| Julieta Lozano | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorney Present for Plaintiff(s):  Attorney Present for Defendant(s):

None Present  None Present

**Proceedings:** (In Chambers) Order Re: Motion to Compel Arbitration

Having reviewed and considered all the briefing filed with respect to defendant Northrop Grumman Corporation's Motion to Compel Arbitration and Dismiss Action, or, Alternatively, to Stay Action (Dkt. 17, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and orders as follows.

## INTRODUCTION

Plaintiff Annette Serna ("plaintiff" or "Serna") filed this action against her former employer, defendant Northrop Grumman Corporation ("defendant" or "Northrop"), in state court on January 28, 2016. (See Dkt. 1, Notice of Removal ("NOR") at ¶ 1; Dkt. 1-1, Complaint). Plaintiff asserted claims for disability discrimination, failure to engage in the good faith interactive process, failure to provide reasonable accommodations, retaliation, and wrongful termination in violation of Cal. Gov't Code §§ 12940, et seq., and California public policy. (See Dkt. 1-1, Complaint at ¶¶ 31-67). Defendant removed the action to this court on March 25, 2016. (See Dkt. 1, NOR).

On May 19, 2016, defendant filed the instant Motion, requesting that the court order plaintiff to submit her claims to arbitration. (See Dkt. 17-1, Memorandum of Points and Authorities in Support of Motion to Compel Arbitration and Dismiss Action, or, Alternatively, to Stay Action ("Memo") at 1-2). Plaintiff filed an opposing brief on May 26, 2016, (see Dkt. 21, Opposition to [] Motion to Compel Arbitration and Dismiss Action ("Opp.")), and defendant filed a reply on June 2, 2016. (See Dkt. 22, Reply Memorandum in Support of [] Motion to Compel Arbitration and Dismiss Action or, Alternatively, Stay Action ("Reply")).

## BACKGROUND

Serna began working for Northrop on November 11, 1981. (See Dkt. 1-1, Complaint at ¶ 7). In her capacity as a Security Manager, Serna was responsible for oversight of security for Northrop's El Segundo, California facility. (See id.). Her duties included, among other things, conducting security investigations, background checks, computer and physical security checks,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

and training. (See id.). After suffering a work-related injury, Serna took a leave of absence on January 25, 2013. (See Dkt. 21, Opp. at 3). Serna alleges that, after she was cleared to return to work on April 1, 2014, Northrop refused to offer her any accommodations and did not make any effort to re-employ her. (See id.). Serna was ultimately terminated on January 26, 2015. (See id.).

In February 2004, Northrop announced a new Dispute Resolution Process ("DRP") that would take effect on May 10, 2004. (See Dkt. 17-2, Declaration of Keri Toghia [] ("Toghia Decl.") at ¶ 3). Northrop mailed the DRP and the accompanying Mediation/Arbitration Process Guide (collectively, the "2004 Arbitration Policy") to Serna's home address in mid-February 2004. (See id. at ¶¶ 3-4). Northrop also made both the DRP and the Mediation/Arbitration Process Guide available to employees on its intranet website. (See id. at ¶ 4).

On September 29, 2006, Northrop revised the DRP and Mediation/Arbitration Process Guide, renaming the latter document, the Employee Mediation/Binding Arbitration Program ("M/A Program"). (See Dkt. 17-2, Toghia Decl. at ¶¶ 5-6). Northrop mailed the 2006 DRP and 2006 M/A Program (collectively, the "2006 Arbitration Policy") to Serna's home address, e-mailed both documents to Serna's company e-mail address, and posted both documents on the company's intranet website. (See id. at ¶¶ 6-9).

The M/A Program was again revised on February 15, 2010 (in conjunction with the 2006 DRP, the "2010 Arbitration Policy"), and distributed to all employees, including Serna, by mail, e-mail, and posting to the company's intranet website. (See Dkt. 17-2, Toghia Decl. at ¶¶ 10-14). Northrop revised the M/A Program again on January 25, 2013, (see id. at ¶ 15 & Exhibit ("Exh.") 20), and revised the DRP on August 30, 2013. (See id. at Exh. 19). Northrop made both documents (collectively, the "2013 Arbitration Policy") available to its employees by posting them on the company's intranet website. (See id. at ¶¶ 15-16).

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "both a liberal federal policy favoring arbitration[] and the fundamental principle that arbitration is a matter of contract[.]" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "calls on courts to 'rigorously enforce agreements to arbitrate.'" Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

221, 105 S.Ct. 1238, 1242 (1985)).

  The FAA creates "a body of federal substantive law of arbitrability," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983), which "preempts contrary state law." Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1158 (9th Cir. 2013). "[E]ven generally applicable state-law rules are preempted if in practice they have a 'disproportionate impact' on arbitration or 'interfere[ ] with fundamental attributes of arbitration and thus create [ ] a scheme inconsistent with the FAA.'" Id. at 1159 (quoting Concepcion, 563 U.S. at 342-44, 131 S.Ct. at 1747-48). Accordingly, when a case arises under the FAA, "the issue of whether [a c]ontract constitute[s] a binding agreement is governed by federal common law[.]" Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1211 (9th Cir. 2016). "[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9 (1987) (emphasis in original). "A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue" is preempted by the FAA. Id.

  "The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party." Gelow v. Cent. Pac. Mortg. Corp., 560 F.Supp.2d 972, 978 (E.D. Cal. 2008); see Sanford v. MemberWorks, Inc., 483 F.3d 956, 963 n. 9 (9th Cir. 2007) ("The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."). Once the moving party has met this initial burden, "the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc., 497 F.App'x 740, 742 (9th Cir. 2012). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S.Ct. at 941.

  "When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." Totten v. Kellogg Brown & Root, LLC, 2016 WL 316019, *3 (C.D. Cal. 2016); see Geoffroy v. Wash. Mut. Bank, 484 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("Courts have employed a summary judgment approach for such hearings [on motions to compel arbitration], ruling as a matter of law where there are no genuine issues of material fact."); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement[, and the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

**DISCUSSION**

I.   AGREEMENT TO ARBITRATE.

The court must first determine "whether a valid agreement to arbitrate exists[.]" Kilgore, 718 F.3d at 1058. "Arbitration is a product of contract. Parties are not required to arbitrate their disagreements unless they have agreed to do so." Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014). "When determining whether a valid contract to arbitrate exists, [the court] appl[ies] ordinary state law principles that govern contract formation." Id. at 1093.

Serna asserts that she "do[es] not specifically recall receiving" the 2004, 2006, or 2010 Arbitration Policies, though she admits that she "may have." (Dkt. 21-1, Declaration of Annette Serna ("Serna Decl.") at ¶¶ 8-10). Serna does not dispute Northrop's contentions regarding how the 2004, 2006, 2010, and 2013 Arbitration Policies were made available to her – that is, by mail, e-mail, and posting on the company's intranet website. (See, generally, id.; Dkt. 21, Opp.). Nor does Serna dispute that the company's intranet site is "available to all employees . . . includ[ing] Ms. Serna when she was employed by Northrop." (Dkt. 17-2, Toghia Decl. at ¶ 9; see, generally, Dkt. 21-1, Serna Decl.). Nonetheless, Serna says "for certain" that she "never, at any point, received" the 2013 Arbitration Policy, (Dkt. 21-1, Serna Decl. at ¶ 11), and that "[a]t no point[] during [her] employment with Northrop did [she] voluntarily agree to arbitrate [her] claims against Northrop." (Id. at ¶ 12). According to plaintiff, "Northrop cannot establish the existence of an arbitration agreement, much less one that is enforceable." (See Dkt. 21, Opp. at 6).

"In California, a clear agreement to arbitrate may be either express or implied in fact." Davis, 755 F.3d at 1093 (internal quotation marks omitted); see Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal.4th 223, 236 (2012) ("A signed agreement is not necessary, however, and a party's acceptance [of an agreement to arbitrate] may be implied in fact[.]"). In the employer-employee context, an "employee's continued employment constitutes her acceptance of an agreement proposed by her employer[.]" Craig, 84 Cal.App.4th at 420. In Craig, the defendant, Brown & Root, provided a copy of its arbitration policy to the plaintiff, Christine Craig, on two occasions. See id. Craig neither signed an acknowledgment of receipt nor otherwise expressly agreed to be bound by the policy. See id. Nonetheless, the state appellate court held that, because the arbitration policy was "received by Craig in 1993 and again in 1994[, and] she continued to work for Brown & Root until 1997[,] . . . she thereby agreed to be bound by the terms of the [policy], including its provision for binding arbitration."[1] Id. at 422.

---

[1]   Numerous other courts applying California law have recognized implied-in-fact agreements in similar circumstances. See, e.g., Aquino v. Toyota Motor Sales USA, Inc., 2016 WL 3055897, *4 (N.D. Cal. 2016) (concluding that "an implied-in-fact agreement exists between Toyota and Ms. Aquino to arbitrate the claims at issue" because, "[a]s in Craig, Ms. Aquino had notice of Toyota's implementation of the arbitration agreement, and she continued to work for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

Serna is no different from the plaintiff in Craig. Although Serna may not recall receiving the 2004, 2006 or 2010 Arbitration Policies, the evidence submitted by Northrop demonstrates otherwise. (See Dkt. 17-2, Toghia Decl. at ¶¶ 3-14). Serna received all three policies by mail. (See id. at ¶¶ 4, 7 & 12; id. at Exh. 3 (2004 proof of mailing); Exh. 4 (2004 service list); Exh. 8 (2006 proof of mailing) & Exh. 15 (2010 proof of mailing)). She was also provided access to each policy via Northrop's intranet website. (See id. at ¶¶ 4, 9 & 14; id. at Exh. 12 (September 29, 2006 intranet update) & Exh. 18 (February 16, 2010 intranet update)). Additionally, Serna received the 2006 and 2010 Arbitration Policies via e-mail. (See id. at ¶¶ 8 & 13; id. at Exh. 9 (2006 e-mail to Serna); Exh. 10 (2006 declaration of electronic mail delivery); Exh. 16 (2010 e-mail to Serna) & Exh. 17 (2010 declaration of electronic mail delivery). Although Serna may not have given her signature or otherwise expressly agreed to comply with Northrop's Arbitration Policies, she did continue her employment at Northrop after receiving a copy of each document, (see Dkt. 21-1, Serna Decl. at ¶ 3), thereby impliedly consenting to the arbitration agreement contained therein. See Craig, 84 Cal.App.4th at 420.

Under California law, an employee "impliedly agree[s] to arbitrate" when "the arbitration agreement [is] a condition of his employment[.]" Wulfe v. Valero Refining Co.-Cal., 2016 WL 791671, *1 (9th Cir. 2016) (citing Craig, 84 Cal.App.4th at 420) ("Wulfe impliedly agreed to arbitrate because the arbitration agreement was a condition of his employment; Wulfe was aware that if he continued to work, he would be bound by this condition; and Wulfe continued his employment with Valero after the arbitration agreement went into effect."); see Davis, 755 F.3d at 1093 ("The handbook Davis received when she began work established the ground rules of her employment, including that Davis and Nordstrom would arbitrate certain disputes. She accepted employment on this basis, so there was a binding agreement to arbitrate."). The 2010 Arbitration Policy made Northrop's arbitration agreement a condition of Serna's employment: it states that, "[b]y accepting or continuing employment on or after 1 November 2006, all covered employees agree to submit any covered disputes to binding arbitration, rather than to have such disputes

---

Toyota after the Agreement went into effect" despite the fact that "she did not sign the Agreement because she did not agree to it"); see also DiGiacinto v. Ameriko-Omserv Corp., 59 Cal.App.4th 629, 635 (1997) (finding implied acceptance of changed compensation rules where plaintiff continued working for defendant after receiving notice of the changes); Asmus v. Pac. Bell, 23 Cal.4th 1, 11 (2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment."). However, California courts have refused to find implied acceptance when the terms of an agreement expressly require the employee to sign or acknowledge the agreement. See Bayer v. Neiman Marcus Holdings, Inc., 582 F.App'x 711, 713-14 (9th Cir. 2014) (collecting cases). Here, Northrop's Arbitration Policies do not require the employee's signature or express consent, but rather apply automatically to "all employees . . . employed on or after 1 November 2006[.]" (See Dkt. 17-2, Toghia Decl., Exh. 13, 2010 M/A Program at 1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | **July 27, 2016** |
|---|---|---|---|
| Title | **Annette Serna v. Northrop Grumman Corp.** | | |

heard by a court or jury."[2] (See Dkt. 17-2, Toghia Decl., Exh. 13, 2010 M/A Program at 1). Because the arbitration agreement was a condition of Serna's employment, she impliedly accepted it by continuing to work at Northrop.

Serna also argues that she is not bound by the 2004, 2006, or 2010 Arbitration Policies because the 2010 Arbitration Policy superceded the 2004 and 2006 Arbitration Policies, and then "expired by its own terms" on February 15, 2013. (See Dkt. 21, Opp. at 9). Serna further argues that she is not bound by the 2013 Arbitration Policy because Northrop failed to provide her with notice of the policy sufficient to support a finding of implied acceptance under Craig. (See id. at 10). Thus, Serna contends that she is not bound by any agreement to arbitrate her claims against Northrop. (See id. at 6). Plaintiff's contentions are unpersuasive.

First, the 2010 Arbitration Policy did not expire, as Serna contends. The policy states that it "is authorized . . . on 15 February 2010 for a period of three years from this date. At the end of this period, this procedure must be reauthorized . . . in accordance with [Northrop Policy.]" (See Dkt. 17-2, Toghia Decl., Exh. 13, 2010 M/A Program at 1). Several weeks before the 2010 Arbitration Policy's authorization was set to lapse, Northrop reauthorized the policy by reissuing it in the form of the 2013 Arbitration Policy.[3] (See id. at Exhs. 19 & 20) (2013 Arbitration Policy). When Serna impliedly accepted the 2010 Arbitration Policy, she agreed as a matter of contract that Northrop had the power to reauthorize it. To the extent that she now questions the validity of the 2013 Arbitration Policy, her challenge is foreclosed by Northrop's contractual right to exercise the power of reauthorization.[4]

---

[2] Serna qualifies as a "covered employee" under the terms of the 2010 Arbitration Policy. (See Dkt. 17-2, Toghia Decl., Exh. 13, 2010 M/A Program at 1) ("This program covers all employees of Northrop Grumman, its subsidiaries, and its other affiliated entities . . . who are employed on or after 1 November 2006[.]")).

[3] Although the 2013 Arbitration Policy does not explicitly state that it is a "reauthorization" of the 2010 Arbitration Policy, the evidence demonstrates that this is so. The 2010 and 2013 Arbitration Policies are materially identical, and the titles and code numbers are unchanged. (See Dkt. 17-2, Toghia Decl. at ¶ 15; compare id. at Exhs. 5 & 13 (2010 Arbitration Policy) with id. at Exhs. 19-20 (2013 Arbitration Policy)). No reason appears as to why Northrop would issue a new policy with the same content as an existing policy – and under the same title and code number – for any purpose other than reauthorization, particularly where the existing policy's authorization was set to lapse within a few weeks. (See id. at Exh. 13, 2010 M/A Program at 1).

[4] In addition to its contractual right to reauthorize the 2010 Arbitration Policy, Northrop has the right under California law to unilaterally modify the terms of plaintiff's employment. See Davis, 755 F.3d at 1093 ("Under California law, Nordstrom was permitted to unilaterally change the terms of Davis's employment[.]"); Schachter v. Citigroup, Inc., 47 Cal.4th 610, 619 (2009) ("[I]t is settled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | **July 27, 2016** |
|---|---|---|---|
| Title | **Annette Serna v. Northrop Grumman Corp.** | | |

Second, even if the 2010 Arbitration Policy had expired, Serna would still be required to submit her claims to arbitration. Serna's argument relies on the "general rule" that, "where the contract at issue has expired, the parties are released . . . from their respective contractual obligations and any dispute between them cannot be said to arise under the contract." Alday v. Raytheon Co., 693 F.3d 772, 784 (9th Cir. 2012) (internal quotation marks omitted). "As with many rules, however, there are exceptions: Certain benefits continue past expiration where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." Id. at 785 (internal quotation marks omitted). In Alday, the Ninth Circuit found that a particular contract provision in a collective bargaining agreement – the right of eligible retirees to enjoy premium-free health insurance – survived the expiration of the agreement because it expressly applied "until the retiree attains age 65." Id. Similarly here, the 2010 Arbitration Policy required Northrop employees to submit "any claim, controversy, or dispute, past, present, or future" to arbitration. (See Dkt. 17-2, Toghia Decl.,Exh. 13, 2010 M/A Program at 2) (emphasis added). Thus, like the contract provision at issue in Alday, Northrop's arbitration provision expressly applies beyond the expiration of the policy.

Furthermore, Serna is independently bound by the 2013 Arbitration Policy. Although it is undisputed that Serna never received actual notice of the 2013 Arbitration Policy by mail or e-mail, neither is required for Serna to be bound. Under California law, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal.App.3d 987, 991 (1972)). "[W]here, as here, there is no evidence that [Serna] had actual knowledge of the agreement, the validity of the . . . agreement turns on whether [Northrop put] a reasonably prudent [employee] on inquiry notice of the terms" of the agreement. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014). Here, when Serna received the 2010 Arbitration Policy, she was put on inquiry notice of both her agreement to arbitrate claims against Northrop, (see Dkt. 17-2, Toghia Decl., Exh. 13, 2010 M/A Program), and Northrop's power to reauthorize the policy at any point. (See id.); see also Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 31 (2d Cir. 2002) (holding under California law that "receipt of a physical document containing contract terms or notice thereof is frequently deemed . . . a sufficient circumstance to place the offeree on inquiry notice of those terms"). When Northrop reauthorized the 2010 Arbitration Policy in the form of the 2013 Arbitration Policy, Serna was put on inquiry notice of the new policy because she had access to it through Northrop's intranet website. See Dang v. Samsung Elecs. Co., 2015 WL 4735520, *6 (N.D. Cal. 2015) (holding consumer had inquiry notice of arbitration provision in manufacturer's information booklet because the provision was not "inconspicuous" even though plaintiff was

---

that an employer may unilaterally alter the terms of an employment agreement, provided such alteration does not run afoul of the Labor Code."); Serpa v. Cal. Sur. Investigations, Inc., 215 Cal.App.4th 695, 704 (2013) (describing an "employer's authority to unilaterally modify [an] arbitration agreement" under California law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | **July 27, 2016** |
|---|---|---|---|
| Title | **Annette Serna v. Northrop Grumman Corp.** | | |

"completely unaware" of the provision) (internal quotation marks omitted). To the extent that Serna argues she is not bound by the 2013 Arbitration Policy merely because she did not read it,[5] her argument is unavailing. See Pinnacle Museum Tower Assn., 55 Cal.4th at 236 (holding that when an employee has accepted a contract and has notice of "[a]n arbitration clause within [the] contract[,]" the clause is binding "even if the [employee] never actually read the clause."); Knutson, 771 F.3d at 567 ("[A] party cannot avoid the terms of a contract by failing to read them[.]"). In short, the court finds that Serna was on inquiry notice of the 2013 Arbitration Policy, and she accepted the terms of that policy by continuing her employment at Northrop after it was issued. See Nguyen, 763 F.3d at 1177.

II.     SCOPE OF AGREEMENT.

Having found that a valid agreement to arbitrate exists, the court must next determine "whether the agreement encompasses the dispute at issue." Kilgore, 718 F.3d at 1058. The 2013 Arbitration Policy "covers and applies to any claim, controversy, or dispute, past, present, or future . . . [w]hich in any way arises out of, relates to, or is associated with [the employee's] employment with the Company [or] the termination of [the employee's] employment[.]" (Dkt. 17-2, Toghia Decl., Exh. 20, 2013 M/A Program at 2). "Examples of claims which are covered by this Program include" claims for personal injury, unlawful discrimination or harassment, unlawful retaliation, and any violation of applicable federal, state, or local law, statute, ordinance, or regulation. (Id. at 3). Here, Serna has brought five state-law employment-related claims against Northrop that clearly fall within the ambit of the 2013 Arbitration Policy. See, e.g., Brookwood v. Bank of Am., 45 Cal.App.4th 1667, 1673-75 (1996) (holding arbitration agreement enforceable and requiring plaintiff to submit FEHA claims to arbitration). Serna does not contend otherwise. (See, generally, Dkt. 21, Opp.). The court therefore finds that the parties' arbitration agreement encompasses the disputes at issue in this case.

---

[5] Serna also contends that she did not have notice of the 2013 Arbitration Policy because "[s]he was . . . never made aware of Northrop's alleged Intranet, the Gateway." (Dkt. 21, Opp. at 4). The evidence shows, however, that Serna was informed via e-mail of both the existence of the company's intranet website and the fact that the 2006 and 2010 Arbitration Policies were available on that site. (See Dkt. 17-2, Toghia Decl., Exh. 9 (2006 e-mail to Serna) & Exh. 16 (2010 e-mail to Serna)). Further, although Serna was on leave when the 2013 Arbitration Policy was posted on the intranet website, (see Dkt. 21, Opp. at 4), the record does not suggest, and Serna does not contend, that her access to the site was revoked during that time. (See Dkt. 17-2, Toghia Decl. at ¶¶ 14 (stating that Northrop's intranet is "available to all employees") & 17 (stating that Serna remained "employed by Northrop from November 1981 until her administrative termination on or around January 25, 2015"); see, generally, Dkt. 21, Opp.; Dkt. 21-1, Serna Decl.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

III.   UNCONSCIONABILITY.

Finally, Serna argues that the 2013 Arbitration Policy is unenforceable due to unconscionability. Under California law, "unconscionability has both a procedural and a substantive element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000) (internal quotation marks omitted). "[P]rocedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract[, b]ut they need not be present in the same degree." Id. (internal alteration marks omitted and emphasis in original). Courts use a "sliding scale" in analyzing these two elements: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. "[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Sonic-Calabasas A, Inc. v. Moreno, 57 Cal.4th 1109, 1145 (2013) (internal quotation marks omitted).

   A.   Procedural Unconscionability.

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013). Serna argues that Northrop's Arbitration Policies are procedurally unconscionable because they were imposed "on a take-it-or-leave-it basis" – that is, "Serna was instructed that she necessarily agreed to the arbitration policy by simply reporting to the same job that she held for over twenty years" and she "had no ability to negotiate the terms or opt out."[6] (Dkt. 21, Opp. at 14). Northrop does not dispute Serna's characterization of the Arbitration Policies as adhesion contracts. (See Dkt. 22, Reply at 10).

"It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." Serpa, 215 Cal.App.4th at 704. "Nonetheless, . . . this adhesive aspect of an agreement is not dispositive." Id. "When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" Id. (quoting Ajamian v. CantorCO2e, L.P., 203 Cal.App.4th 771, 796 (2012)).

---

   [6] Serna does not argue that there are any other indications of oppression or surprise making the Arbitration Policies procedurally unconscionable. (See, generally, Dkt. 21, Opp.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

B.    <u>Substantive Unconscionability</u>.

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." <u>Chavarra</u>, 733 F.3d at 923 (internal quotation marks omitted). Serna cites five elements of the 2013 Arbitration Policy which she asserts make the policy "one-sided" in favor of Northrop: (1) the party who does not initiate the arbitration may choose between JAMS or AAA, "which is effectively a choice of arbitrator panels and arbitration rules"; (2) the expense of a court reporter must be paid by the party requesting the court reporter; (3) the parties cannot conduct more than three depositions without the arbitrator's approval; (4) the scope of arbitration is limited to employment-related claims; and (5) Northrop reserves the right to unilaterally amend the Arbitration Policy without notice to its employees. (<u>See</u> Dkt. 21, Opp. at 15-19).

With respect to the first four elements, Serna argues that, while these provisions "might seem to afford equal rights," their real-world operation almost always favors the employer, and thus they are implicitly one-sided. (<u>See</u> Dkt. 21, Opp. at 15). Specifically, Serna contends that Northrop: (1) rarely sues an employee, so Northrop will almost always reap the benefit of selecting the arbitrator and arbitration rules; (2) has an incentive not to record arbitration proceedings, so Northrop will almost never bear the expense of a court reporter; (3) typically controls the percipient witnesses (who are current employees), so the three-deposition limit gives Northrop a distinct advantage; and (4) rarely sues its employees for employment-related claims, so the limited scope of arbitration will not likely apply to Northrop. (<u>See</u> Dkt. 21, Opp. at 15-19).

Even if these four elements do favor Northrop, they are not necessarily substantively unconscionable. The only case Serna cites, (<u>see</u> Dkt. 21, Opp. at 15-19), where a facially bilateral arbitration provision was held unconscionable is <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165 (9th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1160 (2004). In <u>Ingle</u>, the Ninth Circuit found substantively unconscionable two bilateral provisions in Circuit City's arbitration policy. First, the <u>Ingle</u> court analyzed a provision limiting the scope of arbitration to "any and all employment-related legal disputes, controversies, or claims of an associate." <u>Id.</u> at 1173. The court explained that, "[b]ecause the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes." <u>Id.</u> at 1174. As a result, the court concluded that California law imposes "a rebuttable presumption of substantive unconscionability" on every "contract to arbitrate between an employer and employee." <u>Id.</u> Second, the <u>Ingle</u> court found unconscionable a provision barring both Circuit City and its employees from pursuing class-wide arbitration, reasoning that it "cannot conceive of any circumstances under which an employer would bring a class proceeding against an employee." <u>Id.</u> at 1176.

It is unclear whether <u>Ingle</u> remains good law after <u>AT&T Mobility LLC v. Concepcion</u>, 131 S.Ct. 1740 (2011). In <u>Concepcion</u>, the Supreme Court reiterated that the FAA's preemption rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

"outlaws discrimination in state policy that is unfavorable to arbitration[.]" Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1160 (9th Cir. 2013); see Sakkab v. Luxottica Retail N.A., Inc., 803 F.3d 425, 432 (9th Cir. 2015) ("Even if a state-law rule is 'generally applicable,' it is preempted if it conflicts with the FAA's objectives.") (quoting Concepcion, 131 S.Ct. at 1748). Accordingly, the Concepcion court held that the FAA preempts California's judicial rule regarding the unconscionability of class action waivers. See Concepcion, 131 S.Ct. at 1748. The Ninth Circuit has interpreted Concepcion to stand for the proposition that "the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." Mortensen, 722 F.3d at 1160.

     In light of Concepcion, several courts have refused to follow Ingle's holdings regarding substantive unconscionability. See, e.g., Knatt v. J. C. Penney Corp., Inc., 2016 WL 1241550, *3 (S.D. Cal. 2016) ("The court declines to follow this portion of Ingle because the Supreme Court has repeatedly instructed that agreements to arbitrate are to be 'rigorously enforced,' and the Ninth Circuit's presumption that arbitration provisions in the employment context are substantively unconscionable runs counter to Supreme Court precedent[.]") (citation omitted); Laster v. T-Mobile USA, Inc., 2012 WL 1681762, *4 (S.D. Cal. 2012) ("Plaintiffs contend the arbitration agreement is substantively unconscionable as grossly one-sided . . . citing Ingle[.] This argument was made before, and is now foreclosed by, Concepcion[.]") (citations omitted); Assi v. Citibank Nat'l Ass'n, 2015 WL 166919, *2 (N.D. Cal. 2015) (noting, without resolving, the "debate whether Ingle is still good law after the Supreme Court's arbitration holdings in [Concepcion] and similar decisions"); Peleg v. Neiman Marcus Grp., Inc., 204 Cal.App.4th 1425, 1456 (2012) (recognizing that Ingle was "overruled" by Concepcion).

     Moreover, irrespective of the FAA's preemption rule, it appears that Ingle no longer accurately reflects California law. The presumption that all employer-employee arbitration agreements are substantively unconscionable has been found "inconsistent with the approach taken by[,]" and "has been all but ignored by[,] California courts." Miyasaki v. Real Mex Rests., Inc., 2006 WL 2385229, *5 (N.D. Cal. 2006) (collecting cases). Recently, in an unpublished opinion, the Fourth District Court of Appeal expressly rejected the Ingle presumption, finding "no California case" supporting Ingle's holding. See Avelar v. Seven Fifty-Four, Inc., 2015 WL 326719, *8 (Cal. Ct. App. 2015) (not precedential). Thus, "application of the Ingle presumption in this case would be inconsistent with California law as interpreted by California courts." Miyasaki, 2006 WL 2385229 at *6.

     The court need not resolve whether Ingle's other substantive unconscionability holdings are preempted by Concepcion because, notwithstanding Ingle, none of the elements cited by Serna are so unreasonably favorable to Northrop as to shock the conscience. See Chavarra, 733 F.3d at 923. As an initial matter, the fact that virtually every term in the 2013 Arbitration Policy applies equally to both Serna and Northrop dictates against a finding of substantive unconscionability unless Serna can show that the end result would be "overly harsh, unduly oppressive, or unreasonably favorable" to Northrop. See Sanchez v. Valencia Holding Co., LLC, 61 Cal.4th 899, 911 (2015) (internal quotation marks omitted and emphasis omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

The court agrees with Serna that Northrop will likely defend more actions under the 2013 Arbitration Policy than it will bring, which means it will more often be able to select the forum and rules of arbitration. (See Dkt. 17-2, Toghia Decl., Exh. 20, 2013 M/A Program at 7). This advantage is slight, however, because Northrop is limited to choosing between JAMS and AAA, (see id.), both of which "are reputable arbitration organizations, with reputable arbitrators." Gala v. Britt, 2010 WL 2653411, *1 (D. Nev. 2010). Furthermore, once Northrop makes its selection, both parties will have to follow the same procedures.

The court also agrees with Serna that the policy's three-deposition limit favors Northrop, because Northrop has much greater access to percipient witnesses and relevant information than its employees – particularly when those employees, like Serna, have been terminated. (See Dkt. 17-2, Toghia Decl., Exh. 20, 2013 M/A Program at 9). Yet, the deposition limit is not absolute; the policy itself provides that either party can seek "to notice more than three depositions in connection with a claim" by holding a "joint meeting with the arbitrator to discuss discovery issues, limitations, and scheduling." (See id.); see Dotson v. Amgen, Inc., 181 Cal.App.4th 975, 978 (2010) ("[L]anguage [in the arbitration agreement] permitting the arbitrator to expand discovery upon a showing of need removes any taint of 'unconscionability' from the agreement."). To the extent that either of these elements can be characterized as substantively unconscionable, their degree of unconscionability is fairly low on the "sliding scale." Armendariz, 24 Cal.4th at 114.

The court does not agree with Serna that it is unconscionable for an arbitration agreement to require the party requesting a court reporter to pay the corresponding expenses. This provision is no different from the Local Rules of the Los Angeles Country Superior Court where Serna originally filed this action. See Los Angeles Cnty. Sup. Ct. L.R. 2.21(e) ("If an arrangement for a court reporter is made under this subdivision, it is the responsibility of the arranging party . . . to pay the reporter's fee[.]"). Further, an arbitration provision requiring a plaintiff to pay some degree of costs does not render the entire arbitration agreement unconscionable. See Chavarria, 733 F.3d at 925-26 ("[T]he mere risk that a plaintiff will face prohibitive costs is too speculative to justify invalidating an arbitration agreement.").

The court also does not view Northrop's policy limiting the scope of arbitration to employment-related claims as impermissibly one-sided. Serna cites Ingle for the proposition that such limitations are "presumed unconscionable," (see Dkt. 21, Opp. at 18-19), but as explained previously, California law employs no such presumption. See Avelar, 2015 WL 326719 at *8 ("In our view, an employer could have many reasons to sue an employee (or former employee): for fraud, for conversion, for interfering with the employer's business relationship with other employees, for property damage, for misappropriation of trade secrets, for overpaid wages, for defamation, for a restraining order . . . the list is limited only by the imagination of lawyers.") (not precedential).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | **July 27, 2016** |
|---|---|---|---|
| Title | **Annette Serna v. Northrop Grumman Corp.** | | |

The fifth and final element cited by Serna is the only one that, by its terms, applies unequally to the parties: Northrop has the power to amend the agreement, but Serna does not. (See Dkt. 17-2, Toghia Decl., Exh. 20, 2013 M/A Program at 11). Serna argues that Northrop's unilateral modification provision is unconscionable under Ingle, wherein the Ninth Circuit invalidated a provision "affording Circuit City the unilateral power to terminate or modify" its arbitration policy. Ingle, 328 F.3d at 1179; (see Dkt. 21, Opp. at 19). Yet, in light of recent developments in the state courts, Ingle's holding on unilateral modification provisions no longer accurately describes California law.

In Asmus v. Pacific Bell, 23 Cal.4th 1 (2000), the California Supreme Court interpreted state contract law to allow for unilateral contract modifications provided that "the exercise of the power is subject to limitations, such as fairness and reasonable notice." Id. at 16. After Ingle was issued, the California Courts of Appeal began applying the Asmus principle to employer-employee arbitration contracts, holding that the implied covenant of good faith and fair dealing prevents employers from modifying an agreement "in such a manner as to frustrate the purpose of the contract." Serpa, 215 Cal.App.4th at 706. Thus, even when "the agreement is silent as to notice," a unilateral modification provision is valid because "implied in the unilateral right to modify is the accompanying obligation to do so upon reasonable and fair notice." Id. at 708; see Casas v. Carmax Auto Superstores Cal. LLC, 224 Cal.App.4th 1233, 1237 (2014) ("Under California law . . . even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing."); Peng v. First Republic Bank, 219 Cal.App.4th 1462, 1474 (2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.") (quoting Serpa, 216 Cal.App.4th at 708).

Despite this development in California law, some federal district courts have continued to follow Ingle's holding that unilateral modification provisions are unconscionable. See, e.g., Mohamed v. Uber Techs., Inc., 109 F.Supp.3d 1185, 1229 (N.D. Cal. 2015); Ridgeway v. Nabors Completion & Prod. Servs. Co., 139 F.Supp.3d 1084, 1092 (C.D. Cal. 2015). Other courts have abandoned Ingle in favor of Serpa. See, e.g., Loewen v. Lyft, Inc., 129 F.Supp.3d 945, 959 (N.D. Cal. 2015); Herrera v. CarMax Auto Superstores Cal., LLC, 2014 WL 3398363, *7-8 (C.D. Cal. 2014). The Ninth Circuit, for its part, sided with Serpa in an unpublished opinion, explaining that, under current California law, "unilateral modification provisions . . . are not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'" Ashbey v. Archstone Prop. Mgmt., Inc., 612 F.App'x 430, 432 (9th Cir. 2015) (quoting Serpa, 215 Cal.App.4th at 706). Given the consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2047 FMO (JEMx) | Date | July 27, 2016 |
|---|---|---|---|
| Title | Annette Serna v. Northrop Grumman Corp. | | |

trend in the California Courts of Appeal upholding unilateral modification provisions,[7] combined with the Ninth Circuit's endorsement of the same in Ashbey, 612 F.App'x at 432, the court concludes that Northrop's modification provision is not substantively unconscionable.

Having found a low degree of procedural unconscionability and, at most, a low degree of substantive unconscionability, the court concludes that Northrop's 2013 Arbitration Policy does not so "shock the conscience" as to warrant a finding that it is unenforceable. In short, given the strong federal policy preference in favor of arbitration, see Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S.Ct. at 941, and the court's responsibility to "rigorously enforce agreements to arbitrate," Dean Witter Reynolds, Inc., 470 U.S. at 221, 105 S.Ct. at 1242, the court concludes that the 2013 Arbitration Policy constitutes a valid agreement between the parties to arbitrate the disputes at issue in this case.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant Northrop Grumman Corporation's Motion to Compel Arbitration **(Document No. 22)** is **granted**.

2. This action is **stayed** pending arbitration. The Clerk shall administratively close the case. See Dees v. Billy, 394 F.3d 1290, 1293-94 (9th Cir. 2005).

| | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | jloz |

---

[7] As evidence of "contrasting California Court of Appeal holdings" on this issue, courts adhering to the Ingle rule have often cited Sparks v. Vista Del Mar Child & Family Servs., 207 Cal.App.4th 1511 (2012), abrogated by Harris v. Tap Worldwide, LLC, 248 Cal.App.4th 373 (2016), in which the Second District Court of Appeal found a unilateral modification provision to be unconscionable. See Ridgeway, 139 F.Supp.3d at 1092 (analyzing Sparks). Rather than contrasting with Serpa, however, Sparks simply failed to consider the implication of the implied covenant of good faith and fair dealing on arbitration agreements. See John v. Hanlees Davis, Inc., 2013 WL 3458183, *5 n. 3 (E.D. Cal. 2013) (discussing the shortcomings of Sparks, and rejecting Ingle in favor of Serpa). The Second District Court of Appeal has since "reconsidered the views of the majority in Sparks" and acknowledged "California's rule that a party's modification authority is limited by the implied covenant of good faith and fair dealing." Harris, 248 Cal.App.4th at 535 ("Hence, we conclude, contrary to Sparks, the employer's right to change the Employee Handbook does not render the arbitration agreement illusory.").